UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

DAVID LINDAUER, on behalf of himself
and others similarly situated,

               Plaintiff,                    CASE NO:

v.

Fifth Third Bancorp d/b/a Fifth Third Bank

               Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff David Lindauer, on behalf of himself and all persons similarly situated, files this Class Action Complaint, and alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

### INTRODUCTION

1.     This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant Fifth Third Bancorp ("Fifth Third"), arising from their illegal and unconscionable assessment and collection of excessive overdraft fees that violates the terms of its own agreement.

2.     In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Fifth Third.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.

3.      According to the Consumer Finance Protection Bureau, banks collected more than $15 billion in overdraft fees in 2016.[1]  The CFPB also found that bank revenue from consumer overdraft and NSF fees are 65.4% of all consumer deposit fees.[2]  As one of the largest retail banks in the country, Fifth Third is among the largest beneficiaries of these staggering charges.

4.      Almost by definition, these fees disproportionately affect lower income individuals, who are most likely to maintain low balances.  The Consumer Financial Protection Bureau estimates that 75 percent of overdraft fees are paid by 8 percent of banks' customer base.[3]  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.      The same considerations are not present when customers use debit cards.  Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if

---

[1] https://money.cnn.com/2017/08/04/pf/overdraft-fees-cfpb/index.html

[2] https://files.consumerfinance.gov/f/documents/201701_cfpb_Overdraft-and-Impact-of-Opting-In.pdf

[3] https://files.consumerfinance.gov/f/documents/201708_cfpb_data-point_frequent-overdrafters.pdf

banks provided a warning that an overdraft fee would be incurred, and customers chose to proceed nevertheless.   In fact, in the past, most banks simply declined debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Fifth Third routinely processes such transactions and then charges its customers an overdraft fee of $37.00 even when the transaction is for only a few dollars.

8.      In fact, Fifth Third affirmatively misleads its customers by assuring them that certain debit transactions will be deducted from their accounts in the chronological order they are incurred; in practice, however, Fifth Third re-sequences these debits from high to low order (highest transaction to lowest transaction) to maximize the number of overdrafts and the fees that attach to each occurrence.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Fifth Third.

9.      In many instances, these overdraft fees cost Fifth Third account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars. Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

10.     Thus, it is through manipulation and alteration of customers' transaction records that Fifth Third maximizes overdraft penalties imposed on customers.

### JURISDICTION AND VENUE

11.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction

because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a different state than Fifth Third.

12.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because Fifth Third is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

13.      Plaintiff David Lindauer is a resident of the State of Florida.  The bank where he opened his account is in Florida.

14.      Fifth Third is a national bank incorporated in the State of Ohio with its principal place of business in Cincinnati, Ohio.  Fifth Third regularly and systematically conducts business throughout the State of Florida, including in this district.  Among other things, Fifth Third is engaged in the business of providing retail banking services to millions of consumers, including Plaintiff and members of the putative Class, which include the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Fifth Third and its subsidiaries have an extensive branch network, with more than 1,300 branches primarily in Ohio, Florida, Michigan, Illinois, Indiana, Missouri, Kentucky, West Virginia, Tennessee, North Carolina, and Georgia.

## CLASS ALLEGATIONS

15.      Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

16.      The proposed class is defined as:

> All Fifth Third customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Fifth Third's practice of re-sequencing certain debit card transactions from highest to lowest (the "National Class").

17.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

18.     Excluded from the Class is Fifth Third, its parents, subsidiaries, affiliates, officers and directors, any entity in which Fifth Third has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

19.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Fifth Third's records.

20.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged overdraft fees by Fifth Third as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiff, like all Class members, has been damaged by Fifth Third's misconduct in that he incurred and/or will continue to incur unconscionable overdraft charges.  Furthermore, the factual basis of Fifth Third's misconduct is common to all Class members and represents a common thread of wrongful and unconscionable conduct resulting in injury to all members of the Class.

21.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

22.     Among the questions of law and fact common to the Class are whether Fifth Third:

a.      Affirmatively misinforms its customers that certain debit card transactions will be processed in chronological order when in fact, those transactions are re-sequenced and processed from highest to lowest amount;

b.      Manipulates and reorders certain transactions so that it can increase the number of overdraft fees it imposes;

c.      Manipulates and reorders certain debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

d.      Imposes overdrafts and overdraft fees when, but for reordering certain transactions, there would otherwise be sufficient funds in the account;

e.      Did not obtain affirmative consent from its customers prior to processing transactions that result in overdraft fees;

f.      Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

g.      Delays posting of certain transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

h.      Breaches its contract and the covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its overdraft policies and practices;

i.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

j.      Converts moneys belonging to Plaintiff and other members of the Class through its overdraft policies and practices; and

k.      Is unjustly enriched through its overdraft policies and practices.

23.     Other questions of law and fact common to the Class include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Class is entitled.

24.     Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Fifth Third's account agreements and other related documents.  The

6

Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

25.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

26.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Fifth Third, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Fifth Third's misconduct will proceed without remedy.

27.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.    Fifth Third Bank

28.    According to its website, Fifth Third is one of the nation's top 20 largest bank holding companies in the country, with $142 billion dollars in assets. Fifth Third operates over 1,300 full service branch locations and in excess of 2,600 ATMs throughout twelve states.[4]

29.    Fifth Third is in the business of providing its customers with a variety of banking services.  One of the services provided by Fifth Third for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through such debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically.  As a result, Fifth Third is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

30.    Fifth Third employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of concurrent overdraft fees charged per customer.

31.    As a result of Fifth Third's manipulation and alteration of certain transactions, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft

---

[4] https://www.53.com/content/fifth-third/en/media-center/journalist-resources/journalist-faqs.html.

would otherwise occur.  For example, if a customer, whose account has a $50 balance at the time Fifth Third processed several transactions, made four point of sale transactions of $10 and one subsequent point of sale transaction of $100 on the same business day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100 transaction were debited last—consistent with the actual chronological order of transactions—only one overdraft fee would be assessed.

**B.    Fifth Third's Re-Ordering of Checking Account Transactions**

32.    In an effort to maximize overdraft revenue, Fifth Third manipulates and reorders certain debits from highest to lowest during given periods of time.  Fifth Third reorders transactions for no reason other than to increase the number of overdraft fees it can charge.  This practice violates the explicit terms of the Bank's Deposit Agreement as well as the implied covenant of good faith and fair dealing. A copy of the operative Fifth Third Deposit Agreement is attached as Exhibit A (hereinafter "Deposit Agreement").

33.    The terms of Fifth Third's Deposit Agreement explicitly state that debits with a Time-Stamp, such as point of sale transactions, will be processed in chronological order. Exhibit A at 16.  By instead reordering these types of debits to post from highest to lowest, Fifth Third affirmatively misleads customers about its posting practices in complete contravention to the assertions contained in the Agreement and thus constituting a clear breach of the terms therein.

34.    As part of Fifth Third's Deposit Account Rules and Regulations, Fifth Third lays out for customers the specific, daily method by which credits and debits are processed before an overdraft fee will be assessed:

**Overdraft Calculation Order**

If there is not enough money in your account at the end of the day to cover all of your posted debits (-), then we consider transactions in the following order:

| | | |
|---|---|---|
| **START** with your ending Daily Balance from the prior Business Day. This can be found on Online Banking at 53.com, by reviewing your periodic statement, or by contacting us. | | |
| **FIRST**<br>Add in Credits (+) | Examples of credits (+) may include:<br>• Posted deposits, including cash, check, ATM, and Mobile deposits, and Direct Deposits<br>• Transfers into the account such as ACH and wire transfers<br>• Online/telephone/Mobile Banking transfers into the account<br>• Refunds<br>• Returned Items | |
| **SECOND**<br>Deduct Posted Time-Stamped Debits (-) | Examples of Posted Time-Stamped Debits may include:<br>• Posted ATM withdrawals<br>• Posted Debit Card purchases<br>• Posted online/telephone/Mobile Banking transfer to another Fifth Third Account<br>• Posted time-stamped ACH debits (such as Zelle Pay)<br>• Posted Overdraft Protection Transfers | *In this order:*<br>Oldest to Most Recent |
| **THIRD**<br>Deduct Posted Batch Debits (-) | Examples of Posted Batch Debits may include:<br>• Posted Checks written<br>• Posted online/telephone transfers to a non-Fifth Third account<br>• Posted Online Banking bill payments<br>• Posted outgoing ACH transfers (automatic bill payments)<br>• Posted outgoing wire transfers | *In this order:*<br>Largest Amount to Smallest Amount |
| **FOURTH**<br>Deduct Fees and Service Charges | Fifth Third account fees and services charges on your account | *In this order:*<br>Largest Amount to Smallest Amount |

Exhibit A at 16.

35.    This process starts each day with the ending Daily Balance from the prior business day. First, all credits are applied to a customer's account.

36.    Next, time-stamped debits are to be deducted from a customer's account in the order of oldest to most recent (chronologically). Examples of time-stamped debits are noted to include ATM withdrawals, debit card purchases, banking transfers to another Fifth Third account, ACH debits, and Overdraft Protection transfers.

37.    Fifth Third describes time-stamped debits as "generally … authorized at the time of use (for example, at the time you use your debit card for a purchase or for a withdrawal from an ATM). Exhibit A at 16.

38.     After the debits are deducted, purportedly in chronological order, batch debits are deducted in order of highest to lowest.  Batch debits include checks written, transfers to non-Fifth Third accounts, online banking bill payments, automatic bill payments, and outgoing wire transfers.

39.     Finally, all applicable fees and services charges, including overdraft fees, are deducted from largest to smallest.

40.     Fifth Third misleads its customers regarding its reordering practices.  Fifth Third unequivocally tells its customers that it will post Time Stamped debits from oldest to most recent, but in fact, it posts them from highest to lowest.  This practice violates the Bank Deposit Agreement and the covenant of good faith and fair dealing implied in the Bank Deposit Agreement, as well as the consumer protection laws of numerous states.

41.     Transactions involving debit cards used by Fifth Third customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, Fifth Third is notified instantaneously when the customer's debit card is swiped and has the option to accept or decline these transactions.

42.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Fifth Third's posting system, it fails to post charges in the order in which they are incurred or received.  Fifth Third developed a policy and employs a practice whereby certain debits are posted to its customers' accounts out of chronological order, despite the terms of its agreement, for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

11

43.    Instead of processing such transactions in chronological order, Fifth Third processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

44.    Fifth Third refrains from immediately posting these charges to a customer's account as it receives them.  By holding charges rather than posting them immediately to an account, Fifth Third is able to amass a number of charges on the account.  Subsequently, Fifth Third posts all the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Fifth Third posts certain transactions in order of largest to smallest—not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.

45.    Fifth Third's policy and practice of posting certain charges from largest to smallest, rather than chronologically, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

46.    Fifth Third enforces an unconscionable policy whereby certain charges incurred are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Fifth Third's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide Fifth Third with substantially higher service fee revenues than it would otherwise achieve absent these practices.

47.    As a result, Plaintiff and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually possessed sufficient funds in their accounts to cover those transactions.

C.    **Fifth Third's Overdraft Policies and Practices Are Contrary to Best Practices**

48.    By engaging in the conduct described herein, Fifth Third has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit B.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

49.    According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

50.    The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

51.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee. A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit C.

52.     Fifth Third's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury resulting from such policies, "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

53.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit D finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12-month period, with 27 million accounts incurring five or more overdraft fees.

14

54.    A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



**D.    Fifth Third's Unconscionable Provisions and Policies**

55.    Fifth Third's overdraft policies and practices are unconscionable in the following respects, among others:

a.    Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

b.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

c.      The agreements Fifth Third provides to its customers are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

d.      The agreements provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that it does not state that the Bank always reorders time-stamped debits from high to low, even though Fifth Third *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

**E.      Fifth Third's Overdraft Practices Harmed Plaintiff**

56.     Plaintiff David Lindauer is a checking account customer of Fifth Third.

57.     In connection with this account, the Bank issued a debit card to Mr. Lindauer.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

58.     Fifth Third wrongfully charged Mr. Lindauer overdraft fees on multiple occasions. By way of illustration, Mr. Lindauer was charged four overdraft fees on October 16, 2018, in the amount of $37.00 each, for a total amount of $148.00.

59.     Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Fifth Third Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| Date Posted | Description | Debits | Balance | Fees |
|---|---|---|---|---|
| | (Balance before transactions) | | $  996.44 | |

| 10/15/18 | Deposit | + $200.00 | $ 1,196.44 | |
| 10/15/18 | Web Initiated – Capital One Auto Carpay | - $406.87 | $ 789.57 | |
| 10/15/18 | Debit Card Purchase – Geico | - $398.85 | $ 390.72 | |
| 10/15/18 | Web Initiated – IRS | - $200.00 | $ 190.72 | |
| 10/15/18 | Debit Card Purchase – Ncourt | - $178.00 | $ 12.72 | |
| 10/15/18 | Debit Card Purchase – Simple Movers | - $110.00 | - $ 97.28 | |
| 10/15/18 | Christi Penfield | - $ 60.00 | - $ 157.28 | $37.00 |
| 10/15/18 | Debit Card Purchase – WalMart | - $ 54.52 | - $ 211.80 | $37.00 |
| 10/15/18 | Web Initiated – Capital One Mobile | - $ 49.00 | - $ 260.80 | $37.00 |
| 10/15/18 | Web Initiated – Capital One Mobile | - $ 27.00 | - $ 287.80 | $37.00 |
| | | | **Total Fees:** | **$148.00** |

60.     Each one of Mr. Lindauer's October 15, 2018 debits were time-stamped debits. Pursuant to the terms of Fifth Third's Deposit Account Rules and Regulations, these transactions were to be deducted from his account in the order of oldest to most recent.  However, as illustrated above, the transactions were clearly manipulated to deduct in a sequential, highest-to-lowest, fashion.

61.     If Fifth Third had not manipulated and reordered Mr. Lindauer's transactions from highest to lowest, he would have incurred fewer overdraft fees.

62.     Upon information and belief, if Fifth Third had posted these transactions in chronological order, Mr. Lindauer would have incurred fewer overdraft fees.

63.     Fifth Third wrongfully charged Mr. Lindauer multiple overdraft fees on multiple occasions.  These wrongful overdraft fees occurred as a result of the Bank's manipulation and re-ordering of Plaintiff's debit card transactions.

64.     Fifth Third failed to notify Plaintiff that he could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Fifth Third never notified Plaintiff, at the time they executed the purported insufficient funds transactions described above,

17

that his checking account was overdrawn or that he would be charged an overdraft fee as a result of the transactions. Furthermore, Fifth Third paid, rather than returned, all the debit card charges described above, even though Plaintiff's account purportedly lacked sufficient funds to cover the transactions.

65. Based on information and belief, the overdraft charges incurred by Plaintiff is representative of millions of dollars of overdraft fees that Fifth Third wrongfully assessed and deducted from its customers' accounts. These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

66. Fifth Third's wrongful overdraft policies and practices described above harmed Plaintiff and members of the Class. The following allegations regarding the named Plaintiff are made for purposes of illustrating the harm and damage sustained by Plaintiff and members of the Class as a result of Fifth Third's wrongful overdraft policies and practices.

**F.    The Damages Sustained by Plaintiff and the Class**

67. As shown by these examples, Fifth Third's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account. In fact, "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929.

> It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available.

*Id*.

18

68.     According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied, and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

69.     Thus, as a consequence of Fifth Third's overdraft policies and practices, Plaintiff and the Class has been wrongfully forced to pay overdraft fees.  Fifth Third has improperly deprived Plaintiff and the Class of significant funds, causing ascertainable monetary losses and damages.

70.     As a consequence of Fifth Third's improper overdraft fees, Fifth Third has wrongfully deprived Plaintiff and the Class of funds to which it had no legitimate claim.

71.     Plaintiff had sufficient funds to cover at least some of the transactions for which they and the Class were charged overdraft fees.  Plaintiff and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Fifth Third could impose these wrongful charges.  In many instances, Fifth Third's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiff and Class members.

72.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

### FIRST CLAIM FOR RELIEF
### Breach of Contract

73.     Plaintiff repeats paragraphs 1 through 72 above.

74.     Plaintiff and Fifth Third have contracted for bank account deposit, checking, ATM and debit card services. See Exhibit A.

75.     Under the terms of the Deposit Agreement, Fifth Third promises customers time-stamped debits are to be deducted from their accounts in chronological order; however, Fifth Third actually re-sequences these debits so that they are deducted from highest to lowest amount, thereby increasing the number of overdraft fees borne by Plaintiff and members of the Class.

76.     Since at least 2013, Fifth Third has breached the terms set forth in the Deposit Agreement concerning its sequencing and posting of debit transactions as it relates to overdraft policies and practices as alleged herein.

77.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

78.     Plaintiff and members of the Class have sustained damages as a result of Fifth Third's breach of contract.

### SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

79.     Plaintiff repeats paragraphs 1 through 72, 74-78 above.

80.     Plaintiff and Fifth Third have contracted for bank account deposit, checking, ATM and debit card services.

81.     Under the laws of the states where Fifth Third does business, including in Florida and Ohio, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit— not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually

20

obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

83.    Fifth Third has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

84.    An example of Defendant's breach of the covenant of good faith and fair dealing is that, to the extent the Agreement allows Defendant any discretion in the imposition of overdraft fees and the sequencing of transactions, the reasonable expectations of consumers, including Plaintiff, is that Defendant will <u>not</u> re-order transactions from highest-to-lowest in order to impose the maximum amount of overdraft fees. Additionally, the reasonable expectations of consumers is that if they have sufficient funds in their account at the time a transaction is completed, there will be no overdraft and thus no overdraft fee.

85.    Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

86.    Plaintiff and members of the Class have sustained damages as a result of Fifth Third's breach of the covenant of good faith and fair dealing.

## **THIRD CLAIM FOR RELIEF**
### **Unconscionability**

87.    Plaintiffs repeat paragraphs 1 through 72 above.

88. Fifth Third's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

a. Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

b. The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

c. The Deposit Agreement and related documents, including the Fee Schedule and Rules Governing Deposit Accounts, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and

d. The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not state that the Bank always reorders time-stamped debits from high to low, even though Fifth Third *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

89. Considering the great business acumen and experience of Fifth Third in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

90. Plaintiff and members of the Class have sustained damages as a result of Fifth Third's unconscionable policies and practices as alleged herein.

### **FOURTH CLAIM FOR RELIEF**
### **Conversion**

91. Plaintiff repeats paragraphs 1 through 72 above.

92.     Fifth Third had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

93.     Fifth Third has wrongfully collected overdraft fees from Plaintiff and the members of the Class and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

94.     Fifth Third has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

95.     Fifth Third continues to retain these funds unlawfully without the consent of Plaintiff or members of the Class.

96.     Fifth Third intends to permanently deprive Plaintiff and the members of the Class of these funds.

97.     These funds are properly owned by Plaintiff and the members of the Class, not Fifth Third, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Class.

98.     Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

99.     Fifth Third has wrongfully converted these specific and readily identifiable funds.

100.     Fifth Third's wrongful conduct is continuing.

101.     Because of Fifth Third's deceit in its overdraft assessment policies, Plaintiff and the members of the Class could not have discovered Fifth Third's conversion.

102.     As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

103.    By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from Fifth Third all damages and costs permitted by law, including all amounts that Fifth Third has wrongfully converted.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**

104.    Plaintiffs repeat paragraphs 1 through 72 and 93 through 103 above.

105.    Plaintiff, on behalf of himself and the Class, asserts a claim for unjust enrichment.

106.    By means of Fifth Third's wrongful conduct alleged herein, Fifth Third knowingly provides banking services to Plaintiff and members of the Class that are unfair, unconscionable, and oppressive.

107.    Fifth Third knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class.  In so doing, Fifth Third acted with conscious disregard for the rights of Plaintiff and members of the Class.

108.    As a result of Fifth Third's wrongful conduct as alleged herein, Fifth Third has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

109.    Fifth Third's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

110.    Under the doctrine of unjust enrichment, it is inequitable for Fifth Third to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner.  Fifth Third's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

111.   The financial benefits derived by Fifth Third rightfully belong to Plaintiff and members of the Class.  Fifth Third should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Fifth Third traceable to Plaintiff and the members of the Class.

112.   Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class he seeks to represent, demands a jury trial on all claims so triable, and judgment as follows:

1.    Declaring that Fifth Third has breached its own contract terms;

2.    Alternatively, declaring Fifth Third's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

3.    Restitution of all overdraft fees paid to Fifth Third by Plaintiff and the Class as a result of the wrongs alleged herein within the applicable statutes of limitations, in an amount to be determined at trial;

4.    Disgorgement of the ill-gotten gains derived by Fifth Third from its misconduct;

5.    Actual damages in an amount according to proof;

6.    Punitive and exemplary damages;

7.    Statutory damages where appropriate;

8.    Pre-judgment interest at the maximum rate permitted by applicable law;

9.    Costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

10.    Such other relief as this Court deems just and proper.


Dated:    April 24, 2019.

/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1835 Market Street
Suite 2900
Philadelphia, PA 19103
Tel: 215-985-9177
Fax: 215-985-4169


/s/ Jake Phillips
Jacob Phillips, Esq.
FBN: 0120130
/s/Ed Normand
Edmund A. Normand, Esq.
FBN: 0865590
Normand PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Jacob.phillips@normandpllc.com
Ed@ednormand.com


*To be admitted *pro hac vice*

26